FILED
2011 Dec-09  PM 03:00
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN  DIVISION

| | | |
|---|---|---|
| THE OHIO NATIONAL LIFE INSURANCE CO., | ] ] ] | |
| Plaintiff, | ] ] | |
| v. | ] ] | CV-10-BE-2502-S |
| WENDI W. STANLEY, an individual, | ] ] | |
| Defendant. | ] | |

## MEMORANDUM OPINION

This declaratory judgment matter is before the court on "Plaintiff/Counter-Claim

Defendant Ohio National Life Insurance Company and Third-Party Jake Chesney's Motion for

Summary Judgment" (doc. 27) and Plaintiff/Counter-Claim Defendant's "Motion to Strike

Portions of Wendi Stanley's Opposition to Motion for Summary Judgment" (doc.  33).  For the

reasons stated in this Memorandum Opinion, the court finds that the motion to strike is due to be

DENIED but will TREAT the information in that document as disputes to Defendant/Counter-

claim Plaintiff's facts; and the court further finds that the motion for summary judgment is due to

be GRANTED in its entirety.

## I.  PROCEDURAL BACKGROUND

On September 15, 2010, The Ohio National Life Insurance Company filed a Complaint

for Declaratory Judgment (doc. 1), asserting diversity jurisdiction and requesting that this court

declare that no death proceeds are due and owing to Defendant, Wendi Stanley, as beneficiary

under a policy of insurance issued to her husband, now deceased. On September 24, 2010, Wendi

1

Stanley asserted a Counter-claim against Ohio National and a Third-Party Complaint against Jake Chesney, individually and as agent of Ohio National (doc. 5). In her Counter-claim/Third-Party Complaint, Wendi Stanley asserts four counts: Count I - Fraudulent Misrepresentation against both Ohio National and Chesney; Count II - Fraudulent Suppression against both Ohio National and Chesney; Count III - Negligence and/or Wantonness against both Ohio National and Chesney; and Count IV - Negligent Hiring, Training and Supervision against Ohio National.

On May 31, 2011, Ohio National and Jake Chesney filed the motion for summary judgment as to all claims (doc. 27), to which Wendi Stanley responded (doc. 31). Ohio National and Jake Chesney replied (doc. 32), and this motion has been fully briefed. Ohio National and Jake Chesney filed a motion to strike portions of Wendi Stanley's brief (doc.33). Wendi Stanley did not respond to the motion to strike.

## II. MOTION TO STRIKE

In its "Order Setting Briefing Schedule" (doc. 30) on the motion for summary judgment, the court required that all submissions comply with Appendix II. Section D.3 of Appendix II provides that the proper way to dispute the opposing party's statement of facts is through setting out *in the reply brief* those objections followed by evidentiary record references. Instead of complying with Appendix II as ordered, Ohio National and Jake Chesney set out their disputes to Wendi Stanley's statement of undisputed and disputed facts in the motion to strike, but not in their reply brief. Upon reading the reply brief listing no disputes to Ms. Stanley's fact section, the court initially understood that Ohio National and Jake Chesney were not disputing *any* of Ms. Stanley's facts. The court discovered those disputes to her facts when it addressed the motion to strike, a motion that parties usually employ to object to evidentiary offerings such as affidavits.

2

However, using the motion to strike as the vehicle to communicate the disputation of the opposing party's statement of facts is improper and contrary to the court's order. Therefore, the the court DENIES the motion to strike but will TREAT the disputes communicated in that document as if they were properly included in the reply brief.

### III.  MOTION FOR SUMMARY JUDGMENT

Having addressed the motion to strike, the court now turns to the remaining motion, the motion for summary judgment.  That motion encompasses not only Ohio National's request for declaratory judgment but also Wendi Stanley's claims against the company and Chesney for fraud, negligence/wantonness, and the claims against the company only for negligent hiring, training, and supervision.

### A.  Facts

The following facts are viewed in the light most favorable to Ms. Stanley.  The court has noted when Ms. Stanley has attempted to dispute certain facts and the court has explained why those disputes are not genuine.

This case arises out of a life insurance policy dispute after the suicide of Jeffrey Stanley, the husband of Plaintiff Wendi Stanley.  Jeff Stanley was an officer in the Air Force and was well-educated, receiving an undergraduate degree in computer science and a master's degree in Information Technology. Jeff Stanley thoroughly investigated investments before purchasing them, and was proficient in researching, buying and selling stocks and mutual funds on his own.

The Northwestern Policies

In 2003, the Stanleys decided to purchase life insurance.  A friend recommended that they talk to Jake Chesney, then an agent for Northwestern Mutual Insurance Company.  The Stanleys

3

researched Northwestern life policies, and decided to contact Chesney.

In 2003, the Stanleys each purchased a $250,000 Northwestern Mutual whole life policy through Chesney. However, they did not meet with Chesney personally at this point. With the exception of one 2008 meeting between Chesney and Jeff Stanley, in which no significant discussion of insurance took place, all communications occurred by email, phone, fax and regular mail. Prior to purchasing the Northwestern policies, the Stanleys obtained illustrations regarding how the policies could be expected to perform and how the monies might accumulate. Chesney went over these illustrations in detail with the Stanleys and, when the Stanleys received the Northwestern policies, Chesney also went over the policies with them. The Stanleys read the Northwestern policies upon receipt. The Northwestern policies included a suicide clause with a time limit after which death benefits would be payable even for death by suicide.

After the issuance of the Northwestern policies, Chesney called Jeff Stanley every couple of years. Chesney held himself out as a financial representative, and, according to Wendi Stanley, he became the Stanleys' financial advisor, providing financial advice. The evidence does not reflect that he provided financial advice *except* for advice about life insurance and about placement of the $70,000 separation bonus in a life insurance policy, as further explained later in this opinion.

Chesney's departure from Northwestern

In 2004, Chesney ceased working for Northwestern and began working for Ohio National. That same year, he contacted the Stanleys regarding switching to Ohio National policies, and the Stanleys chose not to switch at that point. Chesney's compensation with Ohio National was 100% commission based. Chesney switched at least 25 and as many as 100

4

Northwestern clients to Ohio National policies.

The Ohio National Policies

In 2006, two years after Chesney began working for Ohio National, Jeff Stanley decided to separate from military service. Realizing that he was to receive a $70,000 separation bonus, the Stanleys called Chesney. Chesney suggested placing the bonus into a whole life policy and discussed with the Stanleys the option of switching to Ohio National life insurance policies. The Stanleys asked Chesney to advise them on whether the Northwestern policy or the Ohio National policy was the better product. Chesney recommended the Ohio National policy, stating in part via email: "Regarding ON vs. NML's death benefit, NML has a good cash value, but it is not competitive on death benefit." (Doc. 29-1, at 107).

The Ohio National policy that Chesney recommended, and eventually sold to Jeff Stanley, had coverage in the amount of $1,250,000, one million dollars more than the Northwestern policy coverage. Although Jeff Stanley could purchase additional coverage from Northwestern, he could not do so through Chesney. Jeff Stanley also considered purchasing life insurance coverage from a third company, USAA, but Chesney told him if he did so, they would have to part ways.

According to Wendi Stanley, the coverage of the Ohio National policy Chesney sold to Jeff Stanley was almost twenty times Jeff Stanley's income; however, the record does not reflect the exact amount of his income. Ohio National's guideline for the coverage amount for a client like Jeff Stanley was up to 30 times the client's income, so this coverage was well within Ohio National's guidelines. Although Wendi Stanley's Undisputed Fact #12 sets Ohio National's guideline at 15 times the client's income instead of 30, the court finds that this apparent

contradiction is not a genuine issue of material fact.   As Ohio National points out, the

"evidence" upon which Stanley relies to support fact #12  is the deposition testimony of Robert

McPheters[1], whom Ohio National offered as a 30(b) corporate representative with an emphasis

on agent recruiting and training but not as to underwriting.  At several points in the deposition,

Ohio National counsel objected to the questions as outside the scope of McPheters's specialty

and the areas on which the company offered his testimony, explaining that the company put up

for deposition another corporate representative, Ray Spears, to offer testimony about the

underwriting category.  Spears, who is vice-president of underwriting and is the representative

Ohio National offered for this purpose, testified that for a man like Jeff Stanley who was 29 in

2006, the appropriate maximum multiple under the Ohio National guidelines was 30 times

income.  In his affidavit, Spears attached as an exhibit entitled "Financial Underwriting" a

---

[1] McPheters's testimony on this subject is as follows:
Q.  Well, Jeff Stanley was 29 when this policy was issued.
A.  Okay.
Q.  What would the guideline say as far as multiple of his income?
A.  Then or today?
Q.  At age 29 then, in 2006.
A.  In 2006, *my recollection would be probably at the time around 15 times their income.  But one of the things after 9-11, the federal government increased those guidelines.  So somebody that would be 29 years old, it's now 30 times their income.*
Q.  I thought you said earlier these are Ohio National guidelines, but then you brought the federal government into it. So tell me how that works.  Are they government guidelines, as opposed to Ohio National guidelines?
A.  Whenever – after 9-11, the federal government came up – I mean they paid the 9-11 victims multiples of their income.  And after that happened, then we actually increased our income replacement guidelines closer to how that was paid out at that time.
Q.  But if I understand what you are saying, although Ohio National eventually did that after 9-11, it was not immediately after?
A.  No, not immediately.
Q.  So in 2006, the Ohio National guideline for a male age 29 at the time of the issuance would have been 15 times –
A.  Right.
Q.  – 15 times the income?
A.  Yeah.
MR. BRADFORD: Again, this is something that  – *the underwriting will be testified to by Ray Spears, and he [McPheters] is not put up for this.*

(Doc. 31-3, at 9, sub-pages 34-6) (emphasis added).

presentation given to Ohio National agents in 2006 showing a maximum multiplier of 30 times earned income was acceptable for a person up to age 30.  He also attached as an exhibit a "RSGUIDE Online Risk Selection Guide Transamerica Reinsurance" dated February 2, 2006 that included a chart listing thirty times an individual's earned income as an appropriate maximum for someone in the age range of twenty to thirty years old.  In light of Spears's testimony as the 30(b) representative for underwriting and the limited nature of McPheters's proffered 30(b) testimony on matters other than underwriting, the court finds that McPheters' "recollection" about underwriting matters and what the guidelines "probably" were five years before his deposition, does not support Stanley's Additional Undisputed Fact #12 and does not create a genuine issue of fact as to Ohio National's 2006 guidelines.  Indeed, even McPheters acknowledged that sometime after September 11, 2001, the guidelines had changed and the multiplier increased to 30.

At the time Chesney discussed switching life insurance policies with the Stanleys, the Northwestern policy's time limit for the suicide clause had expired, and Chesney knew that it had expired.

After communications with Chesney regarding how the Ohio National Policy would operate, Jeff Stanley applied for the $1.25 million Ohio National life policy on November 20, 2006, and Wendi Stanley applied for a $750,000 Ohio National life policy.  Wendi Stanley acknowledges that she was not privy to all of the communications between Chesney and her husband about his insurance.[2]   Chesney filled out the Ohio National applications with

---

[2] In her deposition, Wendi Stanley testified as follows:

Q.   From a reading of that [email between Chesney and Jeff Stanley], does that appear to be a statement by Jake regarding or alerting Jeff to the two-year suicide clause?

information that the Stanleys provided, and then the Stanleys each signed documents

acknowledging that they were replacing the Northwestern policies and the replacement might not

be in their best interests.  One of the signed Ohio National documents was entitled "Important

Notice."  Jeff Stanley signed the first page of the notice and the second page stated in relevant

part: "A Replacement may not be in your best interest, or your decision [to replace your existing

policy with a new policy] could be a good one.  You should discuss the following with your

representative to determine whether Replacement or a Financed Purchase makes sense: . .

**Insurability:**. . .Suicide limitations may begin anew on the new coverage."  (Doc. 29-2, at 2-3).

Another of the documents that Jeff Stanley signed on November 20, 2006 contained, among

other statements, the following:

> ### Client Replacement Information Form
> * * *
> ### Important Information about changing your life insurance
> * * *
> A new life insurance policy may have new suicide and
> contestability periods.

(Doc. 29-2).

Emails that Wendi Stanley produced demonstrate that Chesney made Jeff Stanley aware

of the two-year suicide clause.[3] and suggest that Jeff Stanley had an opportunity to read the

---

A.  Yes.
Q.  Do you think perhaps there were other things that Jeff and Jake discussed of which you were not aware, such as the suicide clause?
A.  Yes.
 (Doc. 29-1, at 111).

[3]Although Wendi Stanley initially testified in her deposition that Chesney never disclosed to her or Jeff that a suicide clause was in the Ohio National policy, after reading emails between Chesney and Jeff referring to a two-year suicide clause, she acknowledged in her deposition that Chesney had told her husband about the Ohio National suicide clause. (Doc. 29-1, at 59-60, 109-110).

8

policy, an opportunity he specifically requested before submission of signed papers.  In a January

25, 2007 email to Chesney, Jeff Stanley stated:

> Jake, I've got the papers signed.  However, I want to read the policy soup to nuts before we finalize.  Do I have time to do that?  Are these signatures "finals"?  If so, please send me the policy.  I can send these to you in the meantime, but don't want to seal the deal until I read the policy.
>
> I did read that there is a "limited time" to return papers.  When is that?

(Doc. 29-1, at 108).  Chesney replied on January 26, 2007, stating:

> Jeff, you can send them to me (or fax them to 630-566-1615).  I will not submit them until you have read the policy which I will send you this weekend.  After you have told me all is good, I will submit the papers.
> * * *
> You will be able to verify in the policy that it will pay a death benefit no matter what (except for the two-year suicide clause), plus you will see who the beneficiaries are and make sure that we have all that kind of stuff listed correctly.

(Doc. 29-3; Doc. 29-1, at 109-10).

Ohio National issued to the Stanleys the two policies for which they applied.  Jeff

Stanley's policy listed a policy date of 11/28/06 with an issue date of 12/26/06.[4]  A page titled

"Policy Contents" included headings for incontestability and suicide.  The suicide clause states as

follows:

> **Suicide**
> If the Insured dies by suicide, while sane or insane or by self-destruction while insane, we will not pay any amount that has been in effect for less than two years.  If the suicide is within the first two Policy Years, we will pay as Death Proceeds the

---

[4]Although these dates are earlier than the January 2007 e-mail dates, Wendi Stanley testified that the Stanleys did not actually receive the policies until a couple of months after the issue date listed on the policy.  (Doc. 29-1, at 67-68).

>   premiums you paid, minus any loans and/or partial surrenders.
>   We will pay the Death Proceeds of any life insurance coverage
>   that has been in effect for more than two years.

(Doc. 29-9, at 21).  Wendi Stanley acknowledges that her husband would have read the policies upon receipt.  He continued to review them and did in fact make several changes in how the policies were funded after he received them.  She further acknowledged that because neither she nor her husband were contemplating suicide at the time of replacing their Northwestern policies with Ohio National policies, the existence of the two-year suicide clause would not have made any difference to them.[5]

Jeff Stanley's Suicide

On September 26, 2008, Jeff Stanley committed suicide by hanging. According to Wendi Stanley, Jeff Stanley understood that he would lose his job the next day.  His suicide occurred within two years of the Ohio National policy date of November 28, 2006 and issue date of December 26, 2006.  The Alabama Certificate of Death declares that the manner of death was "suicide" and that the cause of death was "asphyxia secondary to hanging."  (Doc. 29-4).  The Medical Examiner's report states "CAUSE OF DEATH: asphyxia secondary to hanging ... MANNER OF DEATH: suicide." (Doc. 29-5, at 4).

The Claims Process

After Jeff Stanley's death, Wendi Stanley submitted a claim to Ohio National under his

---

[5] In her deposition testimony, Wendi Stanley initially stated that if Chesney had properly disclosed several matters (that the two-year period in suicide clause began anew; that Chesney would receive a commission only if they replaced their policies with Ohio National policies and not if they kept their Northwestern policy; and the Ohio National policy coverage was greater than they needed), the Stanleys would never have switched to Ohio National. (Doc. 29-1, at 61).  Shortly after that statement, however, she acknowledged that the suicide clause would not have made any difference because neither she nor her husband were contemplating suicide at that point. (Doc. 29-1, at 62).   Even later in her deposition, she acknowledged that Chesney had advised her husband of the two-year suicide clause.  (Doc. 29-1, at 110-111).

policy for death benefits in the amount of $1,250,000.  After an investigation, the company

denied the claim for death benefits of $1,250,000 but did send Wendi Stanley a check in the

amount of $25,654.46, representing the refund of premiums paid plus interest.

## B.  Standard of Review

Summary judgment is an integral part of the Federal Rules of Civil Procedure.  Summary

judgment allows a trial court to decide cases when no genuine issues of material fact are present

and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56.  When a

district court reviews a motion for summary judgment it must determine two things: (1) whether

any genuine issues of material fact exist; and if not, (2) whether the moving party is entitled to

judgment as a matter of law.  Fed. R. Civ. P. 56(c).

The moving party "always bears the initial responsibility of informing the district court of

the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any,' which it believes

demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S.

317, 323 (1986) (quoting Fed. R. Civ. P. 56).  The moving party can meet this burden by offering

evidence showing no dispute of material fact or by showing that the non-moving party's evidence

fails to prove an essential element of its case on which it bears the ultimate burden of proof.

*Celotex*, 477 U.S. at 322-23.  Rule 56, however, does not require "that the moving party support

its motion with affidavits or other similar materials *negating* the opponent's claim."  *Id.*

Once the moving party meets its burden of showing the district court that no genuine

issues of material fact exist, the burden then shifts to the non-moving party "to demonstrate that

there is indeed a material issue of fact that precludes summary judgment."  *Clark v. Coats &*

11

*Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Disagreement between the parties is not significant unless the disagreement presents a "genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)   Substantive law determines which facts are material and which are irrelevant. *Id.* at 248.  In responding to a motion for summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material fact." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)); *see also* Advisory Committee Note to 1963 Amendment of Fed. R. Civ. P. 56(e), 28 U.S.C. app. ("The very mission of summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.").  "The non-moving party need not present evidence in a form admissible at trial; however, he may not merely rest on his pleadings." *Graham v. State Farm Mut. Ins.* Co., 193 F.3d 1274, 1282 (11th Cir. 1999) (citing *Celotex,* 477 U.S. at 324).  If he does, or if the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

In reviewing the evidence submitted, the court must "view the evidence presented through the prism of the substantive evidentiary burden," to determine whether the nonmoving party presented sufficient evidence on which a jury could reasonably find for the nonmoving party. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Commc'n, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988).  The court must refrain from weighing the evidence and making credibility

determinations, because these decisions fall to the province of the jury. *See Anderson*, 477 U.S. at 255; *Stewart v. Booker T. Washington Ins. Co.*, 232 F.3d 844, 848 (11th Cir. 2000); *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999). Furthermore, all evidence and inferences drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. *Graham*, 193 F.3d at 1282. The non-moving party "need not be given the benefit of every inference but only of every reasonable inference." *Id.* The evidence of the non-moving party "is to be believed and all justifiable inferences are to be drawn in [its] favor." *Anderson*, 477 U.S. at 255. After both parties have addressed the motion for summary judgment, the court must grant the motion *if* no genuine issues of material fact exist *and if* the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56.

## C.  Discussion

### 1.  Ohio National's Declaratory Judgment Complaint

In its Complaint, Ohio National requests that this court declare that no death benefits are due and owing to Wendi Stanley, except the amount Ohio National has already paid to her, $25,654.46, representing premiums the Stanleys had paid plus interest. Ohio National has provided undisputed evidence that the policy in effect insuring the life of Jeff Stanley had a two-year suicide clause that precluded payment of death benefits, except a refund of premiums paid, within the first two policy years when the insured died by suicide. Ohio National has also provided undisputed evidence that Jeff Stanley died by suicide within the first two years the policy was in existence. In her responsive brief, Wendi Stanley acknowledges that "[u]nder the plain language of the suicide clause, no death benefit was due." (Doc. 31, at 10). Therefore, the court finds that Ohio National's request for a declaratory judgment that no further death benefits

13

are due and owing to Wendi Stanley is due to be GRANTED, and the court so DECLARES.

The court will proceed to address Wendi Stanley's claims set forth in her Counter-claim against Ohio National and her Third Party Complaint against Jake Chesney.

## 2.  Wendi Stanley's Claims

In her Counter-claim against Ohio National and her Third Party Complaint against Jake Chesney, Wendi Standley asserts the following claims: Count I - Fraudulent Misrepresentation against both Ohio National and Chesney; Count II - Fraudulent Suppression against both Ohio National and Chesney; Count III - Negligence and/or Wantonness against both Ohio National and Chesney; and Count IV - Negligent Hiring, Training and Supervision against Ohio National. Ohio National and Chesney assert as an affirmative defense that the applicable statutes of limitations bar all of these claims and argues that, in any case, Ms. Stanley cannot establish her *prima facie* cases on any of these claims.

### a.  **Statutes of Limitations**

#### *1.  Fraud - Counts I & II*

In Counts I and II, Ms. Stanley asserts fraud claims.  Because Ohio National and Chesney raise the statutory bar as an affirmative defense, the court must first determine whether the applicable statute of limitations bars those claims.

A two-year statute of limitations applies to fraud claims.  Ala. Code §§ 6-2-38(l) (1975); *see, e.g., DGB, LLC v. Hinds*, 55 So. 3d 218, 224 (Ala. 2010).  Ms. Stanley's Counter-claim and Third Party Complaint state that the fraud occurred in November 2006 and that the Stanleys relied on that fraud to their detriment in November 2006 by replacing their Northwestern insurance policies with Ohio National policies, including the policy on Jeff Stanley's life made

14

the basis of this suit.  Because Ms. Stanley did not bring the instant suit until 2010, more than

two years from the date of the alleged fraud set forth in her Counter-claim/Third Party

Complaint, the claims of fraud appear to be barred on their face.

"When. . .the plaintiff's complaint on its face is barred by the statute of limitations, the

complaint must also show that he or she falls within the savings clause of § 6-2-3." *DGB, LLC*,

55 So. 3d at 226 (quoting *Miller v. Mobile County Bd. of Health*, 409 So. 2d 420, 422 (Ala.

1981)).  The savings clause for fraud, Section 6-2-3 of the Alabama Code, provides as follows:

> In actions seeking relief on the ground of fraud where the statute has
> created a bar, the claim must not be considered as having accrued until the
> discovery by the aggrieved party of the fact constituting the fraud, after
> which he must have two years within which to prosecute his action.

Ala. Code § 6-2-3 (1975).  The Alabama Supreme Court has held "that to show that a plaintiff's

claims fall within the savings clause of § 6-2-3 a complaint must allege the time and

circumstances of the discovery of the cause of action. . . .The complaint must also allege the facts

or circumstances by which the Ohio National and Chesney concealed the cause of action or

injury and what prevented the plaintiff from discovering the facts surrounding the injury." *DGB,*

*LLC,* 55 So. 3d at 226 (citations omitted).

Ms. Stanley's Counter-claim and Third Party Complaint do not mention the fraud savings

clause, do not cite to Section 6-2-3, and do not specifically state when she discovered the fraud or

what prevented her and/or her husband from discovering the fraud earlier.  Therefore, the court is

not convinced that she has sufficiently alleged in her pleadings that she falls within the savings

clause.  She has simply alleged fraud and suppression and apparently assumes that the court must

accept that she did not and could not have discovered the fraud until the company denied her

claim for death benefits.  Assuming *arguendo* that Ms. Stanley has sufficiently invoked the savings clause in her pleadings, without finding that she has done so, the court will determine whether she has met her burden of proving that she falls within that clause.

In her responsive brief, Ms. Stanley stated "Ohio National and Chesney have failed to show when Ms. Stanley discovered those three facts or how she reasonably should have discovered them before Mr. Stanley's death." (Doc. 31, at 12).  In so arguing, Ms. Stanley ignores her own burden; because the fraud claims are barred on their face, *she* has the burden to present proof that she and her husband were unaware of facts that would lead a reasonable person to suspect fraud until the two year period before she filed her claims.  *See, e.g., Dominick v. Dixie Nat'l Life Ins. Co.,* 809 F.2d 1559 (11th Cir. 1987) ("A party who seeks to have his cause of action saved by Section 6-2-3 carries the burden of proving that he falls within it.").   In the "Additional Undisputed Facts" and "Additional Disputed Facts" in Ms. Stanley's responsive brief, she presents no facts establishing when she and her husband discovered the alleged fraud/suppression and why she and her husband were previously unaware of facts that would lead a reasonable person to suspect fraud.  The court notes that this issue is complicated by the fact that Wendi Stanley acknowledged she was not privy to all communications between her husband and Chesney, so she cannot testify as to the exact information her husband knew and did not know about the insurance transaction.  Because she cannot do so, and further, because Jeff Stanley was the purchaser of the relevant policy and was the party with whom Chesney primarily communicated, the court finds that Wendi Stanley has not and cannot meet her burden of proving that she falls within the savings clause of Section 6-2-3.

Therefore, the court finds that the motion for summary judgment is due to be GRANTED

16

as to Ms. Stanley's fraud claims set forth in Counts I and II of the Counter-claim and Third Party

Complaint.  As to those claims, the court will ENTER JUDGMENT against Ms. Stanley and in

favor of Ohio National, Counter-claim Defendant, and in favor of Jake Chesney, Third Party

Defendant.

*Alternative rulings on fraud counts*

Alternatively, the court finds that Wendi Stanley has abandoned her claim in Count I for

misrepresentation and bases her fraud claim only on fraudulent suppression, as alleged in Count

II.  *See, e.g., Coal. for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301,

1326 (11th Cir. 2000) ("failure to brief and argue this issue during the proceedings before the

district court is grounds for finding that the issue has been abandoned"); *Lyes v. City of Riviera

Beach, Fla.*, 126 F.3d 1380, 1388 (11th Cir. 1997) (noting that "'the onus is upon the parties to

formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment

are deemed abandoned'") (citation omitted), *reh'g granted and vacated by* 136 F.3d 1294 (1998),

*reinstated by* 166 F.3d 1332, 1336 (11th Cir. 1999) (*en banc*).  In Count I of her Counterclaim

and Third-Party Complaint, Stanley claims that Chesney misrepresented that the Ohio National

policy was superior to the Northwestern policy; that it was in the Stanleys' best interest to replace

the Northwestern policy with the Ohio National policy; that the Stanleys would lose nothing and

only gain by the replacement; and that no detrimental change in coverage would occur.  (Doc. 5,

at 16).  In her responsive brief, Stanley explains: "As shown in Stanley's testimony, her claim is

based on the *inadequate disclosure or suppression* of the three specific facts identified earlier in

this brief."  (Doc. 31, at 10).  Those three "critical" facts were: "(a) The time for the suicide

clause would start over with the Ohio National Policy; (b) Chesney would earn a commission of

17

the Stanleys replaced their policy but not if they kept their Northwestern policy and (c) Chesney was selling them more insurance coverage than they needed." (Doc. 31, at 9). Because Ohio National and Chesney addressed the claims in both fraud counts in their brief but Wendi Stanley's responsive brief only addressed and attempted to support her fraudulent suppression claims, she has abandoned her misrepresentation claim in Count I.

In any case, the court finds that Wendi Stanley has abandoned her misrepresentation claim in Count I and has not established her *prima facie* case as to the fraud claim in Count I.

The court next turns to the fraudulent suppression claim in Count II and Stanley's assertion in her brief that Chesney fraudulently suppressed the three facts listed above. Under Alabama law, to establish a *prima facie* case for fraudulent suppression, a plaintiff must show: (1) that the defendant had a duty to disclose an existing, material fact; (2) that the defendant concealed or failed to disclose this material fact; (3) that the defendant's concealment or failure to disclose induced the plaintiff to act or to refrain from acting; and (4) that the plaintiff suffered actual damage as a proximate result of being induced to act or to refrain from acting. *Soti v. Lowe's Home Centers, Inc.*, 906 So. 2d 916, 923 (Ala. 2005) (quoting *Hobbs v. Ala. Power Co.,* 775 So. 2d 783, 787 (Ala. 2000)); Ala. Code § 6-5-102; *see also Liberty Nat. Life Ins. Co. v. McAllister,* 675 So. 2d 1292, 1296-97 (Ala. 1995), *cert. dismissed,* 516 U.S. 1035 (1995). As noted previously, Stanley acknowledges that she was not aware of all communications between Chesney and her husband and the content of those communications, so she cannot establish what information Chesney disclosed and did not disclose to her husband. (*See Doc.* 29-1, at 111). Thus, as an alternative ruling, the court finds that she has failed to meet her *prima facie* case of fraudulent suppression in Count II.

18

2.   *Negligence/Wantonness* - Counts III and IV

Ohio National and Chesney also assert that the applicable statutes of limitations bar Ms. Stanley's negligence and wantonness claims.  The statute of limitations that applies to negligence and wantonness claims is Section 6-2-38 of the Alabama Code, which provides for a two-year limitation period regardless of whether the liability is based upon the defendant's own actions or based on the doctrine of respondeat superior.  Ala. Code § 6-2-38 (1975); *see, e.g., Hensley v. Poole,* 910 So. 2d 96, 101 (Ala. 2005) (two year limitations period for negligence); *Booker v. United Am. Ins. Co.*, 700 So. 2d 1333, 1339 (Ala. 1997) (finding that Section 6-2-38's two year limitations period applies for negligence and wantonness "whether the liability is direct or based upon the doctrine of respondeat superior").  These claims accrue at the time a plaintiff is entitled to maintain an action, or "at the time of the first legal injury, regardless of whether the full amount of damages is apparent."  *Booker,* 700 So. 2d at 1339-40.

In Count III, Ms. Stanley asserts negligence and wantonness against both Ohio National and Chesney based on Chesney's actions in November 2006 of advising the Stanleys to replace their Northwestern policy with the Ohio National policy and failing disclose to the Stanleys information about the Ohio National policy.   The Alabama Supreme Court has held that the statutory period began running on a negligence and wantonness "action for inducing a plaintiff to give up an old insurance policy" when the plaintiff gave up the old policy "and signed an application and wrote a check for the [new] policy." *Booker*, 700 So. 2d at 1340 (explaining the decision in *Henson v. Celtic Life Ins. Co.*, 621 So. 2d 1268, 1274 (Ala. 1993) and applying that case to bar negligence and wantonness claims brought more than two years after the purchase of the new policy).  *See also In re Capstone Bldg. Corp.*, __ So. 3d ___, No. 1090966, 2011 WL

19

2164027, *8, 11-13 (Ala. June 3, 2011) (approving "the long line of cases that addressed the question of what statute of limitations was applicable to a claim of wantonness and that repeatedly answered that question by deciding that the two-year statute of limitations period of § 6-2-38(*l*) was applicable," and further, limiting to its specific facts an exception to that line of cases, *McKenzie v. Killian*, 887 So. 2d 861 (Ala. 2003), and overruling *McKenzie's* holding for all future claims within its purview).  Applying that case law to the present case, the claims accrued when Jeff Stanley purchased the Ohio National policy insuring his life and replacing the Northwestern policy, which would be in 2006 or,  at the latest, January of 2007.  Because Wendi Stanley brought the instant action more than two years past that accrual date, the court finds that the statute of limitations bars the negligence and wantonness claims in Count III.

The court notes that under some circumstances, the saving clause of Section 6-2-3 applies not only to fraud claims but also to "'other torts not arising in fraud'" where the defendant fraudulently concealed the existence of those causes of action.  *See, e.g., DGB, LLC*, 55 So. 3d at 224 (quoting *Holdbrooks v. Central Bank of Alabama*, 435 So. 2d 1250, 1251 (Ala. 1983) and overruling *B&B Properties v. Dryvit Sys., Inc.,* 708 So. 2d 189 (Ala. Civ. App. 1997)).  However, once again, Ms. Stanley did not invoke the savings clause by referring to it in Count III, did not specifically state when she discovered the cause of action or what prevented her and/or her husband from discovering it earlier.  Therefore, the court is not convinced that she has sufficiently alleged in Count III that her claim falls within the savings clause.  Assuming *arguendo* that she sufficiently did so, she has not met her burden of presenting *evidence* proving that her claim falls within the savings clause, as discussed above.  Therefore, the court finds that Ms. Stanley failed to bring this negligence and wantonness action within two years of the accrual

date in 2006 or, at the latest, January 2007, and that she has not met her burden of proving that her claim falls within the savings clause.

Thus, the court finds that the motion for summary judgment is due to be GRANTED as to the claims set forth in Count III of the Counter-claim and Third Party Complaint.  The court will ENTER JUDGMENT against Ms. Stanley and in favor of Ohio National, Counter-claim Defendant, and Jake Chesney, Third Party Defendant.

In Count IV, Ms. Stanley's claims are based on Ohio National's alleged actions of negligently hiring Chesney in 2004 and its alleged negligent training and supervision of Chesney. Because the only wrongful acts of Chesney that Ms. Stanley identifies in her pleading are those occurring in 2006, or at the latest in January of 2007, Ohio National's negligence in training and supervising Chesney must have occurred in January 2007 or before.  However, she did not file the Counter-claim/Third Party Complaint until 2010, more than two years after the accrual of her negligence claims.  Therefore, Ms. Stanley's negligence claims in Count IV are barred by the two year statute of limitations.

To the extent, if any, that  Ms. Stanley now attempts to argue that she did not discover her causes of action set forth in Count IV until two years before she filed her claims, Ms. Stanley's argument fails for the same reasons discussed above: she did not sufficiently allege that her claim fell within the savings clause and even assuming *arguendo* that she attempted to invoke the savings clause in her pleading, she has not met her burden of proving that her claim falls within the savings clause.

Thus, the court finds that the motion for summary judgment is due to be GRANTED as to Ms. Stanley's claims in Count IV of the Counter-claim.  As to those claims, the court will

ENTER JUDGMENT against Ms. Stanley and in favor of Ohio National, Counter-claim

Defendant.

No further claims remain. The court will enter a separate Order consistent with this

Memorandum Opinion.

DONE and ORDERED this 9th day of December, 2011.

KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE